IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| PHUWADOL THAMATHITIKHUN and DESIREE THAMATHITIKHUN | § § § | |
| *Plaintiffs,* | § § | CIVIL ACTION NO. 6:15-cv-390 |
| V. | § § | |
| BANK OF AMERICA, N.A., ET AL. *Defendants.* | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants'[1] Motion for Summary Judgment on the following causes of action: (1) violations of the Real Estate Settlement Procedures Act (RESPA), (2) violations of the Texas Debt Collection Act (TDCA), (3) negligent misrepresentation, (4) negligence, (5) violations of the Fair Debt Collection Practices Act (FDCPA), and (6) common law fraud (Doc. No. 53). The Motion also addresses Defendant BONY's vicarious liability, Plaintiffs' request for an accounting, and the Declaratory Judgment Act. *Id.* Plaintiffs, Phuwadol Thamathitikhun and Desiree Thamathitikhun, filed a response to the Motion (Doc. No. 63); Defendants filed a Reply (Doc. No. 66); and Plaintiffs filed a Surreply (Doc. No. 67). Having considered the parties' arguments, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.**

---

[1] Defendants are (1) New Penn Financial, LLC d/b/a/ Shellpoint Mortgage Servicing ("SMS"), and (2) Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificate Holders of CWALT, Inc. Alternative Loan Trust 2005-73CB, Mortgage Pass-Through Certificates, Series 2005-73CB ("BONY").

1

## BACKGROUND

In 2005, Plaintiffs executed a note and deed of trust to a piece of property located at 15096 Highway 110 South, Whitehouse, Texas, 75791. Doc. No. 63 at 4. Plaintiffs obtained a loan on the property,[2] and the loan's original lender was America's Wholesale Lender, a New York Corporation. Doc. No. 63-1 at 9. At some point after 2005, Bank of America became the lender of the loan. Defendants assert that the loan had "a long history of being in serious default," and Plaintiffs explain that the loan fell into default because of health issues that caused Plaintiffs' monetary trouble. Doc. No. 53 at 2; Doc. No. 63 at 5. Specifically, Plaintiffs state that Phuwadol was unable to work due to a brain tumor, which left Desiree as the sole income earner for the household. *Id.* In October 2012, Desiree broke her neck and shoulder, and her treatment required surgery and physical therapy. *Id.* Plaintiffs state that Desiree was unable to work until her recovery was complete in October of 2013. *Id.* However, Plaintiffs assert that they continued to make their mortgage payments until June of 2013, at which point their savings had been depleted. *Id.*

Plaintiffs argue that in July 2013, they alerted Bank of America of their inability to make the June 2013 loan payment but they received a notice of default and intent to accelerate a short time later in August 2013. *Id.* Plaintiffs contend that they set up a repayment plan with Bank of America and made the first of six payments under that plan on November 8, 2013, but when they attempted to make the next payment, Bank of America informed them that the loan had been sold and that the new mortgage company would contact them. *Id.* at 5–6. Plaintiffs contend they were unaware of the identity of the loan purchaser and were unable to determine the purchaser after many attempts to do so until July 2014, when they finally received a letter from a

---
[2] The Deed of Trust describes the borrower as "Phuwadol Thamathitikhun, joined herein pro forma by his wife, Desiree M. Thamathitikhun." Doc. No. 33-1 at 1.

foreclosure company stating that SMS—the new loan servicer—was foreclosing on the property. *Id.* at 6–7. Plaintiffs state that once they were aware SMS was the loan servicer, they attempted to get their account up to date by requesting a loan modification and the total amount due on the loan, but the foreclosure company and SMS failed to provide the information and would not accept Plaintiffs' attempted payment of $11,000. *Id.* at 7.

In late September 2014, Plaintiffs received a letter giving them notice that a foreclosure sale was scheduled for October 7, 2014. Doc. No. 53-4 at 29 and 63-1 at 21. After they received the notice, Plaintiffs called SMS to discuss reinstatement of the loan, and during the call SMS informed Plaintiffs that the foreclosure sale would not take place until Plaintiffs had an opportunity to submit loan modification paperwork. Doc. No. 63 at 8. Plaintiffs argue that during a follow-up call on October 3, 2014, SMS assured them that, although the home was in foreclosure, no foreclosure sale would take place because there was no foreclosure sale date set. *Id.* Contrary to SMS's statement on October 3, 2014, however, the property foreclosure sale did take place on October 7, 2014. *Id.* BONY purchased the property at the sale. Doc. No. 63-1 at 27.

Defendants argue that because the loan was in default in 2013, the non-judicial foreclosure was appropriate. Doc. No. 53 at 2. Defendants contend that Plaintiffs bring this suit in a "meritless attempt to rescind a valid foreclosure of the property." *Id.*

## **LEGAL STANDARD**

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56; *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts,

or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

## DISCUSSION

*A. RESPA*

If a mortgagee transfers a mortgage, the transferee must notify the borrower of the transfer within fifteen days. 12 U.S.C. § 26005(c)(2)(A). SMS argues that it provided Plaintiffs the required notice, but Plaintiffs contend that SMS did not comply with the statute because they never received the notice of transfer. Doc. No. 53 at 7; Doc. No. 63 at 12–13. According to the deed of trust, "[t]he notice address must be the Property Address unless Borrower has designated a substitute notice address by notice to Lender." Doc. No. 53-2 at 15. Defendants argue that a December 24, 2013 letter sent to Plaintiffs was sufficient notice under the statute. Doc. No. 53 at

5

7. Defendants state that SMS mailed the letter "to Plaintiff's preferred address" of 3813 Windward Dr., The Colony, Texas 75056-4638. *Id.*

Contrary to Defendants' argument and citations to the deed of trust, there is no indication that Plaintiffs provided a substitute or preferred address other than conclusory statements in an affidavit of Olivia Miller, an SMS representative. Doc. No. 53-4. In her affidavit, Miller states that the notice was "mailed to Plaintiff Phuwadol Thamathitikhun's preferred address of 3813 Windward Drive, The Colony, Texas 75056." *Id.* at 2. However, according to the deed of trust, the notice should have been sent to the property address instead of the Windward Drive address unless Plaintiffs indicated a preference to receive correspondence at the Windward Drive address. Because Defendants did not clearly identify Plaintiffs' designation to receive correspondence regarding the mortgage at a different address—other than Miller's conclusory statement of such—it failed to meet its burden of proof by "demonstrat[ing] the absence of a genuine issue of material fact." *Little*, 37 F.3d at 1075. As such, the Court **DENIES** Defendants' Motion for Summary Judgment with respect to whether SMS failed to provide Plaintiffs notice of transfer of servicing the loan.

Plaintiffs have also brought two other claims under RESPA: (1) SMS's alleged failure to provide accurate payoff information pursuant to 12 C.F.R. § 1026.36(c)(3) and (2) SMS's alleged failure to provide monthly statements pursuant to 12 C.F.R. § 1026.41. In their response, Plaintiffs unambiguously waived their claim that SMS did not provide them with accurate payoff information. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment on this issue.

With respect to Plaintiffs' contention that SMS failed to provide them with monthly statements pursuant to 12 C.F.R. § 1026.41, Plaintiffs—in their response—did not address Defendants' contention that SMS did in fact provide those statements. *See* Doc. No. 63. Therefore, the Court considers Defendants' argument undisputed for purposes of the Motion. L.R.-CV-7(d). As such, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's allegation that SMS failed to provide them with monthly statements.

   *B. TDCA, the Economic Loss Rule, and the Statute of Frauds*

The Economic Loss Rule "precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Caldwell v. Flagstar Bank,* No. 3:12-CV-1855-K-BD, 2013 U.S. Dist. LEXIS 27750 (N.D. Tex. Feb. 14, 2013). However, when the duty allegedly breached is independent of the contract and the resulting injury is not "merely the economic loss of a contractual benefit," the rule does not preclude an independent claim. *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015).

The Statute of Frauds states that "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative," and an agreement to delay foreclosure falls within this rule. TEX. BUS. & COM. CODE ANN. § 26.02(b) (West 2015); *Milton v. United States Bank Nat'l Ass'n*, No. 4:10-cv-538, 2012 U.S. Dist. LEXIS 76412 at *9 (E.D. Tex. May 31, 2012).

As an initial matter, Defendants argue that because Plaintiffs' TDCA claims rest on their RESPA claims, the TDCA claims necessarily fail because Plaintiff's RESPA claims fail. Doc.

No. 53 at 9. However, because the Court disagrees with Defendants with regard to Plaintiffs' RESPA claim, this argument also fails.

Defendants also argue that the economic loss rule precludes recovery under the TDCA because the subject matter of this dispute lies in contract. Doc. No. 53 at 9. Defendants contend that the rule precludes claims such as the ones at issue here that are "premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender." *Id.*, citing S*ingh v. JPMorgan Chase Bank, N.A.*, No. 4:11-CV-607, 2012 U.S. Dist. LEXIS 127552 (E.D. Tex. Sept. 7, 2012). In other words, Defendants argue that when the only injury claimed is one of economic damages recoverable under a breach of contract claim, a claim under the TDCA is precluded by the economic loss rule. *Id.*, citing *Caldwell v. Flagstar Bank,* No. 3:12-CV-1855-K-BD, 2013 U.S. Dist. LEXIS 27750 (N.D. Tex. Feb. 14, 2013). Plaintiffs contend, however, that a recent Fifth Circuit decision altered the economic loss rule so that a lender may be liable for statutory claims such as the TDCA in conjunction with a breach of contract claim. Doc. No. 63 at 13–14, citing *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463 (5th Cir. 2015). After a review of the cited authority, the Court is not persuaded that the state of the law is clear such that it compels summary judgment in Defendants' favor.

Defendants also contend that Plaintiff's TDCA claim is precluded because an agreement to delay foreclosure—such as the phone statement on October 3, 2014 that no foreclosure sale date was set—falls within the Statute of Frauds. Doc. No. 53 at 10. Defendants assert that the statement was an oral statement and was in direct opposition to the writings. *Id.* Plaintiffs' respond that SMS's representation that there was no foreclosure date set was not a promise to

delay foreclosure but an affirmative statement—an affirmative misrepresentation—that no foreclosure date even existed. Doc. No. 63 at 18. Plaintiffs contend there is a vast difference between those two types of statements and that the latter does not fall within the Statute of Frauds. *Id.* Similar to the conclusion reached regarding the economic loss rule, the Court is not persuaded that Defendants have appropriately applied the Statute of Frauds to the facts of this case, i.e., an alleged affirmative misrepresentation as opposed to a promise to delay foreclosure, such that the Court can grant summary judgment in their favor.

For these reasons, the Court **DENIES** Defendants' Motion for Summary Judgment with respect to the TDCA claims.

*C. Negligence*

To prove a negligence claim, a plaintiff must prove (1) that a duty exists, (2) there was a breach of that duty, and (3) damages resulted from the breach. *Hayes v. U.S.*, 899 F.2d 438, 443 (5th Cir. 1990). Here, Defendants argue that Plaintiffs cannot prove the first element because there is no special relationship between Plaintiffs as the mortgagor and SMS as the mortgagee that gives rise to a duty. Doc. No. 53 at 11–12. Plaintiffs respond by arguing that although there is typically no special relationship between a mortgagor and a mortgagee, a lender can still owe a borrower the duty to exercise reasonable care to avoid a foreseeable risk to the borrower. Doc. No. 63 at 21, citing *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012). Therefore, Plaintiff argues, Defendants had a legal duty to correct the false and misleading statement SMS made to Plaintiffs on October 3, 2014 that no foreclosure sale date was set because a foreclosure date had been set for October 7, 2014. *Id.* Plaintiffs argue that "indeed, even an accidental false representation can be actionable." Doc. No. 63 at 21, citing

9

*Milestone Props. Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 119 (Tex. App.—Austin 1993, no writ).

Caselaw cited by Plaintiffs explains that "[w]here there has been no clear duty created under case law, the question of whether a legal duty exits is based upon the circumstances," and courts must balance several factors to determine whether a duty exists. *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex.2012). Defendants argue that *Hurd* "further dismantles Plaintiffs' negligence claims" because even if SMS had not represented that no foreclosure sale date was scheduled, Plaintiffs would have lost their home at the foreclosure sale anyway because the sale date had already been set and would have taken place even in the absence of the telephone call. Doc. No. 66 at 6. Therefore, Defendants contend, the balancing act discussed in *Hurd* favors Defendants' position. *Id.*

The Court is not persuaded that the lack of a duty is absolutely clear in this case. Defendants' conclusory statements that Plaintiffs' injury would have occurred even without the October 3, 2014 telephone statement are unconvincing. Although the foreclosure date was already set for October 7, 2014, the record includes evidence that Plaintiffs were attempting to stop the sale and reinstate their loan. As such, the Court **DENIES** Defendants' Motion for Summary Judgment with respect to whether a duty exists.

Defendants also argue that Plaintiff may not bring a negligence claim under the Texas Finance Code because "no authority provides a private right of action for negligence arising out of such statutory violations." Doc. No. 53 at 12. Plaintiffs fail to address this argument in their Response. Therefore, the Court considers Defendants' argument undisputed for purposes of the

Motion. L.R.-CV-7(d). Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's negligence claim under the Texas Finance Code.

   D. *Negligent Misrepresentation, Negligence, and Common Law Fraud*

Defendants argue that the economic loss rule bars Plaintiffs' claims of negligence, negligent misrepresentation, and common law fraud because these claims are rooted in the note and deed of trust. Doc. No. 53 at 14–15. Plaintiff responds by arguing that these claims are independent of the note and deed of trust because those documents are silent as to (1) the veracity of the lender's representations and (2) SMS's policy of helping borrowers in default find a way to reinstate their loan and keep their home.

Because the Court is not persuaded that the obligations described by Plaintiffs flowed from and cannot exist independently from the note and/or deed of trust, Defendants' Motion for Summary Judgment is **DENIED** on this issue.

   E. FDCPA

> The FDCPA makes it unlawful for debt collectors to use abusive tactics while collecting debts for others. The FDCPA defines a debt collector as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." The term "debt collector" does not include: Any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person. The [statute's] legislative history [ ] indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.

*Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (internal citations omitted).

Defendants contend that SMS is not a debt collector as defined by the statute and therefore Plaintiffs' FDCPA claims must fail. Doc. No. 53 at 16. Defendants argue that "as a

result of its principal business not being debt collection, mortgage servicers may be considered to be statutorily exempt, regardless of the status of the debt at the time service begins." *Id.* at 17, citing *Edwards v. Ocwen Loan Servicing, LLC*, 9:10-CV-89, 2012 WL 844396, at *8 (E.D. Tex. Mar. 12, 2012). In response, Plaintiffs argue that because the loan was in default at the time SMS obtained the loan in December 2013, SMS is considered a debt collector under the statute. Doc. No. 63 at 2, citing *Perry*, 756 F.2d at 1208. The Court is not persuaded that the law cited by Defendants compels summary judgment in their favor.

Defendants also argue that FDCPA claims are precluded by the economic loss rule and Statute of Frauds. *Id.* However, these arguments fails for the same reasons discussed in previous sections.

Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment on Plaintiffs' FDCPA claim.

*F. BONY*

Defendants urge the Court to find that Plaintiffs' claims against BONY fail because its alleged liability is based solely on the alleged wrongdoing of SMS. Doc. No. 53 at 18. Plaintiffs argue that BONY, as the mortgagee, is vicariously liable for the wrongdoing of its servicing agents. Doc. No. 63 at 28. Due to the unclear state of the law regarding whether a mortgagee can be held vicariously liable for the actions of its servicers and the unsettled factual record, summary judgment concluding that BONY cannot be vicariously liable for SMS's actions is inappropriate. Therefore, the Court **DENIES** Defendants' Motion for Summary Judgment on vicarious liability.

*G. Accounting*

Within Defendants' motion, they mention that Plaintiffs have requested an accounting of all transactions of the mortgage loan. Doc. No. 53 at 18–19. Defendants urge the Court to deny that relief because (1) Plaintiffs have not acted equitably and (2) Plaintiffs can request this relief through discovery and need not involve the Court. Doc. No. 53 at 18–19. Plaintiffs explain the necessity of an accounting in their response. Doc. No. 63 at 28. The Court encourages the parties to work together on discovery issues in this case. A pretrial determination on whether Defendants must produce the requested accounting in unnecessary.

*H. Declaratory Judgment*

In their motion, Defendants argue that Plaintiffs are not entitled to a declaratory judgment because "Plaintiffs may not 'use the Declaratory Judgment Act to create a private cause of action where none exists.'" Doc. No. 53 at 19, citing *Reid v. Aransas Cnty.*, 805 F. Supp. 2d 322 (S.D. Tex. Apr. 6, 2011). In response, Plaintiffs state that a declaratory judgment is not an appropriate issue for summary judgment because it cannot by itself create a cause of action. Doc. No. 63 at 28. The Court finds that this is an issue better left for trial and to fashioning the appropriate relief, if any, at that time.

## CONCLUSION

The Court **GRANTS** Defendants' Motion with respect to (1) SMS's alleged failure to provide Plaintiffs with accurate payoff information pursuant to RESPA, (2) SMS's alleged failure to provide Plaintiffs with monthly statements pursuant to RESPA, and (3) Defendants' negligence under the Texas Finance Code.

The Court **DENIES** Defendants' Motion with respect to the remaining claims: failure to provide written notice of transfer under RESPA, violations of the TDCA, negligent misrepresentation, negligence, violations of the FDCPA, and common law fraud.

**So ORDERED and SIGNED this 18th day of March, 2016.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE